**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DISH NETWORK L.L.C., ECHOSTAR
TECHNOLOGIES L.L.C., and NAGRASTAR LLC,

                          Plaintiffs,          DECISION and ORDER

-vs-                           11-CV-06297-CJS

SALVATORE DELVECCHIO,

                         Defendant.

---

**APPEARANCE**

For Plaintiffs:                     Robert R. Jones, Esq.
                                   19 Chenango Street
                                   P.O. Box 2039
                                   Binghamton, NY 13902-2039

**INTRODUCTION**

This matter is before the Court on Plaintiffs' motion for default judgment. (Doc. No. 6). On June 14, 2011, Plaintiffs DISH Network L.L.C., EchoStar Technologies, L.L.C., and NagraStar LLC (collectively, "Plaintiffs"), filed their Complaint against Defendant Salvatore DelVecchio ("Defendant"). (Doc. No. 1.) On August 15, 2011, Plaintiffs filed a Motion for Entry of Default and Motion for Default Judgment for an amount of $10,000 and injunctive relief. (Doc. No. 6.) For the reasons stated below, Plaintiffs' application is granted in full.

**BACKGROUND**

Unless otherwise noted the following facts are taken from Plaintiffs' Complaint and are assumed to be true for purposes of this analysis. (Doc. No. 1.) Defendant unlawfully circumvented the DISH Network security system and received encrypted, copyrighted, subscription-based DISH Network satellite television programming without authorization and

without payment to DISH Network. Defendant did so through a subscription to the service operated by www.dark-angel.ca ("Dark Angel"). Defendant utilized the Dark Angel service to obtain DISH Network's descrambling control words, which he in turn, used to illegally receive and descramble DISH Network programming. Plaintiffs' Complaint alleges three counts of unlawful conduct:

> I. Circumventing a technological measure that effectively controls access to a copyrighted work without authorization by Plaintiffs, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1), by obtaining DISH Network's descrambling control words from the Dark Angel pirate television service and using the control words to view DISH Network's satellite transmissions of television programming;
>
> II. Receiving DISH Network's satellite transmissions of television programming and descrambling control words without authorization by Plaintiffs, in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605(a); and
>
> III. Intentionally intercepting DISH Network's satellite transmissions of television programming and descrambling control words without authorization by Plaintiffs, in violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a) and § 2520.

Plaintiffs request entry of a default judgment against Defendant on Count III of Plaintiffs' Complaint for violations of §§ 2511(1)(a) and 2520 of the ECPA. (Doc. No. 6.) Plaintiffs further request that the Court dismiss with prejudice Counts I & II of their Complaint if their Motion for Count III is granted. (*Id.*) Because the Court grants entry of a default judgment on Count III of the complaint, it dismisses Counts I & II of Plaintiffs' complaint.

On June 20, 2011, Defendant was served with the Summons and Complaint. (Doc. No. 5.) On September 16, 2011, Defendant's attorney sent to the Court a copy of a letter, dated September 15, 2011, and addressed to Plaintiffs' counsel in which he noted Defendant's willingness to settle for $2,500; otherwise, as stated in the letter, Defendant

was not opposing issuance of a default judgment. Plaintiffs submitted evidence that Defendant is not an infant, not an incompetent person, and not on active duty in the military or otherwise exempted under the Service Members' Civil Relief Act.

## ANALYSIS

### *Default Judgment*

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). If a party has failed to plead or otherwise defend an action the opposing party may bring this to the Court's attention. First "Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default from the clerk of the court, a plaintiff must next seek a judgment by default under Rule 55(b)." *Id*. Pursuant to Rule 55(b)(2), the non-defaulting party must apply to the Court to request default judgment, but only when the defaulting party has appeared in the action must the non-defaulting party provide advance notice of its motion for default judgment. Fed. R. Civ. P. 55(b)(2).

Here, Defendant was required to serve an answer within twenty-one days after being served and failed to do so. Defendant's only response was the September 15, 2011, letter to Plaintiffs' counsel about a willingness to settle. "Ordinarily, an appearance in an action requires a formal submission to the Court." *Green*, 420 F.3d at 105.

> Circuits are divided on whether anything less than a formal appearance is necessary to actuate the notice requirement of Rule 55(b)(2). The prevailing view is that "the notice requirement contained in Rule 55(b)(2)" applies not only to parties who have formally appeared, but also to those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.

*Id*. "[I]n certain circumstances courts have been willing to find that a party had informally appeared in an action based on settlement discussions, in each of those cases the defendant clearly indicated to the plaintiff that if settlement negotiations failed, the defendant would diligently defend the suit." *Id*. at 107. There is no indication in his counsel's letter that Defendant intends to defend this suit, and, further, the letter even states that this Court may issue a default judgment. Accordingly, based on the facts of the case at hand and the controlling case law, Defendant has never appeared in this action.

In addition to considering whether the defaulting party has appeared, the Court must also consider, "whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment." *Garden City Boxing Club, Inc. v. Giambra*, No. 02-CV-839S, 2004 WL 1698633 at *1 (W.D.N.Y. Jul.27, 2004). Other factors the Court must consider when asked to enter a default judgment include: the possibility of prejudice to the plaintiff; the sum of money at stake in the action; the possibility of a dispute concerning material facts; whether the default was due to excusable neglect; and the strong policy favoring decisions on the merits. 10-55 Moore's Federal Practice, Civil § 55.31[2] (2011). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability…." *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A complaint is sufficient if it contains, "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 U.S.1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 U.S. at 1950. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

As indicated above, the Court will only address the sufficiency of Count III, the cause of action under the ECPA. Under 18 U.S.C. § 2511(1)(a), any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept … any electronic communication … shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)." Subsection (5)(ii) refers to § 2520 which allows for a private right of action against all who violate 18 U.S.C. § 2511. *See DirecTV, Inc. v. Lewis*, No. 03-CV-6241CJS(F), 2004 WL 941805, at *6 (W.D.N.Y. Jan. 6, 2004).

Courts have recognized encrypted satellite transmissions as "electronic communications" under the ECPA. *See DirecTV, Inc. v. Perrier*, No. 03-CV-400S, 2004 WL 941641 (W.D.N.Y Mar. 15, 2004); *United States v. One Macom Video Cipher 11*, 985 F.2d 258, 260-61 (6th Cir. 1993) (recognizing the ECPA's plain language encompasses satellite signals); *United States v. Lande*, 968 F.2d 907, 909-10 (9th Cir. 1992) (finding that interception of satellite signals constituted a violation of § 2511 because satellite signals are electronic communications under the ECPA). For the foregoing reasons, the Court adopts Plaintiffs' proposed findings as follows:

(a) DISH Network is a multi-channel video provider that delivers video, audio, and data services via a direct broadcast satellite system to more than 14 million subscribers. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event the purchase price. (Dkt. 1, ¶¶ 9–10.)

(b) DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, and other holders of programming rights. The works broadcast on the DISH Network platform are copyrighted. DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing. (Dkt. 1, ¶¶ 11–12.)

(c) DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites then relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers that have the necessary equipment. (Dkt. 1, ¶ 13.)

(d) The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the entitlement control message and forwards that message to the smart card. Provided that the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word. The control word is then transmitted back to the receiver in order to decrypt the DISH Network satellite signal. Each receiver and smart card is assigned a unique serial number which is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases. (Dkt. 1, ¶¶ 17–18.)

(e) Dark Angel was a pirate internet key sharing ("IKS") television service that provided end-users computer software and decryption codes needed to descramble DISH Network television programming without authority and without payment of a subscription fee to DISH Network. (Dkt. 1, ¶ 22.)

(f) Defendant violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1)(a) and 2520, by utilizing the Dark Angel pirate IKS television service and server to obtain DISH Network's descrambling control words to illegally receive, intercept, and descramble DISH Network copyrighted television programming. (Dkt. 1, ¶¶ 25, 37–39.)

(Doc. No. 6-4 ¶ 3.) Plaintiffs' complaint pleads sufficient facts to show a plausible claim for relief. Therefore, Defendant is liable to the Plaintiffs under 18 U.S.C. § 2511(1)(a) for which the Court may award damages under § 2520(c)(2).

***Damages under § 2520(c)(2)***

Plaintiffs seek statutory damages, which are $10,000. (Doc. No. 6.) A hearing is not required as long as the court ensures that there is a basis for the damages awarded. *See Transatlantic Marine Claims Agency. Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). With respect to scrambled or encrypted electronic communications, the ECPA authorizes an award of damages in the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000. 18 U.S.C. § 2520(c)(2).

Here, there is a basis for the $10,000 statutory damages Plaintiffs seek. However, some ambiguity within § 2520 has caused courts to differ in their application of the damages section. Below is the current version of § 2520(c) in full:

> (1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:
>
> > (A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages

> suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.
>
> (B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.
>
> (2) In any other action under this section, the court *may* assess as damages whichever is the greater of—
>
> > (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
> >
> > (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c) (emphasis added). Some courts have found the statutory $10,000 damage amount to be excessive. *See DirecTV, Inc. v. Kaas*, No. C03-4047-PAZ, 2003 WL 22965078 (N.D.Iowa Dec.17, 2003) (finding $10,000 award excessive based on similar facts); *cf. Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996) ("We think it logical that Congress chose to make the award of [statutory] damages discretionary, given the potential of the law to bring financial ruin to persons of modest means, even in cases of trivial transgressions."); *but see DirecTV v. Braun*, No. CIV 3:03CV937, 2004 WL 288805, at *2 (D.Conn. Feb.9, 2004) (awarding $10,000 pursuant to 18 U.S.C. § 2520(c)(2)(B) based on Defendant's illegal interception of Plaintiff's broadcast signal). A case from this District found that a court has discretion to give the statutory maximum or nothing at all, but no discretion to award damages in an amount between the two statutory choices. *See Perrier*, 2004 WL at *4. However, the plaintiff in *Perrier* was still awarded damages in a separate cause of action, which the court found appropriately punished the defendant for his illegal actions. *Id*.

In a case similar to the one at bar, the Fourth Circuit has taken the view that awarding no damages at all would be an abuse of discretion. *See DirecTV, Inc. v. Rawlins*, 523 F.3d 318 (4th Cir. 2008) (reversing a district court decision denying to award any damages without giving serious consideration to the adverse effects of letting misconduct go unsanctioned). In *DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1009–10 (7th Cir. 2010), the Seventh Circuit considered the question of whether a district court judge has discretion to award damages under § 2520(c)(2), but less than the maximum; however, it declined to decide the question. The panel decision in *Barczewski* considered the analogous provision of 47 U.S.C. § 605(e) from the Communications Act of 1934, as amended, and wrote:

> Section 605(e), which covers not only persons who pirate signals for their own use but also persons who help others steal encrypted signals (a more serious transgression), allows district judges discretion over the amount of the penalty. Perhaps § 2520(c)(2) should be read the same way by treating "may" as applicable to all of the ensuing language, so that the greater power to pretermit any penalty entails the lesser power to pretermit some of the potential penalty. Or perhaps a district judge should first make any appropriate award under § 605(e) and turn to § 2520(c) only if § 605(e) is unavailable or does not authorize an adequate penalty. By treating § 605(e) and § 2520(c) together, a judge may be able to achieve appropriate damages even if § 2520(c) imposes an all-or-none choice. That is not a question we need address today.

*Barczewski*, 604 F.3d at 1010.

In this case, the Court finds that the statutory amount of $10,000 is appropriate. Congress wrote § 2520(c)(2) to give discretion to the Court in determining whether to award damages, but the plain language of the statute does not, contrary to the Seventh Circuit's dictum, authorize the Court to grant anything other than the damages permitted by the statute. Although a range is given for violations under 2520(c)(1), Congress provided no such range under 2520(c)(2). Therefore, in the Court's view, the discretion provided to it

allows it only to decide between no damages and $10,000. If Congress wished to provide a damages range, the language within the statute should have reflected it as it does in § 2520(c)(1).

***Plaintiffs' Request for a Permanent Injunction***

The Court finds that Plaintiffs' request for a permanent injunction is appropriate. The ECPA authorizes courts to grant appropriate relief including preliminary and other equitable or declaratory relief as may be appropriate. 18 U.S.C. § 2520(b)(2). The criteria for the issuance of a permanent injunction requires a plaintiff demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that based on the Defendant's conduct, Plaintiffs have suffered irreparable injury based on the piracy of their service. In addition, the damages provided for above, while significant, are inadequate to prevent future piracy without injunctive relief. The only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity, so the balance clearly weighs in Plaintiffs' favor. The public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law. The Court finds the criteria for a permanent injunction have been met and therefore orders Defendant be permanently enjoined from intercepting Plaintiffs' encrypted satellite communications or assisting anyone else in doing so.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED, that Plaintiffs' application is granted; and it is further

ORDERED, that the Clerk enter judgment against Defendant in the amount of $10,000; and it is further

ORDERED, that Plaintiffs' causes of action under the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1) [Count I of Pls.' Compl.] and under the Communications Act, 47 U.S.C. § 605(a) [Count II of Pls.' Compl.] are dismissed; and it is further

ORDERED, that Defendant and anyone acting in active concert or participation with, or at the direction or control of Defendant are hereby PERMANENTLY ENJOINED from:

    a. intentionally intercepting Plaintiffs' satellite transmissions without Plaintiffs' authorization through any means including Internet Key Sharing (also known as Control Word Sharing); and

    b. testing, analyzing, reverse engineering, manipulating or otherwise extracting codes or other technological information or data from Plaintiffs' satellite television receivers, access cards, data stream or any other part or component of Plaintiffs' security system or other technology used to gain access to DISH Network programming including through the use of Internet Key Sharing (also known as Control Word Sharing); and it is further

ORDERED, that this Permanent Injunction takes effect immediately; and it is further

ORDERED, that the Court retains jurisdiction to enforce this Final Judgment and Permanent Injunction.

So Ordered.

Dated:  October 7, 2011
         Rochester, New York
                ENTER:

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge